**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
**www.flmb.uscourts.gov**

In re:

Chapter 13
Case No. 8:26-bk-09429-RCT

**Jennifer Ann Troiano**
**aka Jennifer Ann Battaglia**

Debtor.
______________________________/

**U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF BKPL-EG HOLDING TRUST'S MOTION FOR PROSPECTIVE RELIEF FROM THE AUTOMATIC STAY**

U.S. Bank Trust National Association, as Trustee of BKPL-EG Holding Trust, its successor and/or assigns ("**Movant**"), by its undersigned counsel hereby files this Motion for Prospective Relief From the Automatic Stay, pursuant to Federal Rules of Bankruptcy Procedure 4001 and 9014 to lift the automatic stay imposed by 11 U.S.C. § 362 (a) for cause under 11 U.S.C. § 362 (d), to exercise its non-bankruptcy rights with respect to certain real property mortgaged to Movant. In support thereof, the Movant states as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2).

2. Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND AND PATTERN**
**OF MULTIPLE BANKRUTCY FILINGS**

**A. The Bankruptcy Filing.**

3. On October 15, 2026, Jennifer Ann Troiano ("**Debtor**"), filed a Voluntary Petition for relief pursuant to Chapter 13 of the United States Bankruptcy Code [D.E. 1].

**B. The secured interests and amounts due on the Property.**

4. On January 12, 2018, Brian P. Troiano (the "Debtor's Spouse") executed and delivered a Fixed/Adjustable Rate Note to lender Angel Oak Mortgage Solutions LLC, in the original principal amount of Four Hundred Seventy-Two Thousand Five Hundred and 00/100 ($472,500.00) dollars ("**Note**") for the purchase of the property located at 10119 Parley Drive, Tampa, FL 33626 ("**Property**"). The amount owed to Movant is secured by that certain mortgage of even date, recorded on January 12, 2018, as Doc # 2018019634, OR Book 25494, Page 380, in the Public Records of Hillsborough County, Florida, encumbering the Property as described in the mortgage then owned by and in possession of the Debtor ("**Mortgage**").

5. Movant is the holder of the Note and the Mortgage by virtue of those Allonges to Note and Assignment(s) of Mortgage attached to the Note and Mortgage. The Note, Mortgage, Allonges to Note and Assignment(s) of Mortgage constitute the Loan Documents (collectively, the "**Loan Documents**"). A true and correct copy of the Loan Documents are attached to this Motion as **Composite Exhibit "A, B, and C"**.

6. The Property is legally described as follows:

Lot 9, Block 16, WESTCHASE SECTION "323", a subdivision according to the plat thereof recorded at Plat Book 84, Page 62, in the Public Records of Hillsborough County, Florida.

7. The Debtor is the owner of and/or holds an interest in the Property.

8. On May 7, 2024, a foreclosure action was commenced against the Debtor and Debtor's Spouse as to the Property, in the Circuit Court of the Thirteenth Judicial Circuit In & For Hillsborough County, Florida (Case No. 24-CA-003708, U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF BKPL-EG BASKET TRUST, V. JENNIFER TROIANO AND BRIAN P. TROIANO et. al.) (the "Foreclosure Proceeding"). A True and correct copy of the Foreclosure Docket is attached hereto as **Exhibit "D**".

9. On January 13, 2025, the Circuit Court entered a Final Judgment of Foreclosure in the total amount of $616,242.48. A true and correct copy of the Final Judgment is attached hereto as **Exhibit "E**". Pursuant to the Final Judgment, the initial foreclosure sale was scheduled for February 14, 2025.

10. Movant asserts that during the period of February 11, 2025 to October 15, 2026, there has been a pattern of multiple bankruptcy case filings by the Debtor and Debtor's Spouse, including three bankruptcy cases, constituting a scheme to hinder or delay Movant's efforts in exercising its state court rights. The bankruptcy filings are detailed as follows:

a. ***Case No. 8:25-bk-00845-CED*** On February 11, 2025, the Debtor's Spouse filed a Voluntary Chapter 13 petition (the 1st BKCY") in the Middle District of Florida cancelling the initial foreclosure sale.

   Pursuant to the Schedules filed in the 1st BKCY, the Debtor's Spouse had a monthly income of $19,453.00, monthly expense of $12,063.00, resulting in a net monthly income of $7,480.00. True and correct copies of Schedule I and J filed in the 1st BKCY are attached hereto as **Exhibit "F**".

   On July 9, 2025, the Debtor filed its Second Amended Chapter 13 Plan [D.E. 21] which proposed to cure the pre-petition arrearage and pay the post-petition payments through the Plan. On November 20, 2026, the Court entered Order Confirming Chapter 13 Plan in the 1st BKCY.

The 1st BKCY was dismissed on May 14, 2026 for failure to make plan payment. After dismissal of the 1st BCKY, the foreclosure sale was rescheduled for June 19, 2026.

On June 17, 2026, the Circuit Court entered an Amended Final Judgment of Foreclosure in the total amount of $596,078.48. A true and correct copy of the Amended Final Judgment is attached hereto as **Exhibit "G"**.

b. ***Case No. 8:26-05280-CED*** On June 18, 2026, on the eve of the rescheduled foreclosure sale, Debtor's Spouse filed a Voluntary Chapter 7 petition (the 2nd BKCY") in the Middle District of Florida which again cancelled the rescheduled foreclosure sale.

Pursuant to the Schedules filed in the 2nd BKCY, the Debtor's Spouse had a monthly income of $9.000.00, monthly expense of $8,950.00, resulting in a net monthly income of $50.00. True and correct copies of Schedule I and J filed in the 2nd BKCY are attached hereto as **Exhibit "H"**.

On July 6, 2026, Movant filed its Motion for Relief from the Automatic Stay [D.E. 14] in the 2nd BKCY. On August 3, 2026, the Court entered the Order Granting Motion for Relief from Stay [D.E. 17] in the 2nd BKCY (the "Order Granting Stay Relief").

After entry of the Order Granting Stay Relief, the foreclosure sale was rescheduled for October 16, 2026. To date, the 2nd BKCY is still pending.

c. **Current Case** – On October 15, 2026, the Debtor filed the instant case (the "Instant Case") one day before the rescheduled foreclosure sale. As a result, the rescheduled foreclosure sale was again cancelled.

## <u>PROCEDURAL BACKGROUND - INSTANT BKCY CASE</u>

1. On October 15, 2026 ("Petition Date"), Jennifer Ann Troiano ("Debtor") filed the instant case under Chapter 13 of the United States Bankruptcy Code [D.E. 1].

2. On October 15, 2026, the Debtor filed its Chapter 13 Plan [D.E. 2] (the "Plan"), which proposed to again attempt cure the pre-petition arrearage and pay post-petition payments through the bankruptcy. The Plan list the pre-petition arrearage as $220,000 and pay a post-petition payment of

$3,990.00 and proposes to pay a total monthly plan payment of $8,500 in months 1 - 60.

3. As of October 19, 2026, the total projected payoff due and owing Movant through October 15, 2026 was $672,093.96 which does not include the attorney's fees and costs associated with the filing of this instant Motion. A true and correct copy of the Payoff is attached hereto as **Exhibit "I"**.

4. Pursuant to the Reinstatement attached hereto as **Exhibit "J"**, Secured Creditor's claim is contractually due for the December 1, 2022 payment and the delinquency amount as of October 15, 2026 was approximately $231,136.95.

5. Pursuant to the Debtor's Schedule I, the Debtor is currently unemployed and seeking employment and anticipates monthly income in the amount of $3,500.00 and the Debtor's Spouse has a currently monthly income of $10,500.00 resulting in a anticipated combined monthly income of $14,000.00. Pursuant to Debtor's Schedule J, the Debtor's monthly expenses are $5,500.00 resulting in a monthly net income of $8,500.00 based on the Debtor's anticipated income and an actual current monthly net income of $5,000.00.

## LEGAL BASIS FOR RELIEF

1. Pursuant to 11 U.S.C. §362(d)(4)(B) provides:

> (d) on request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay
>
> (4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either
>
> A. transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or

B. multiple bankruptcy filings affecting such real property.

2. Movant submits that it is entitled to prospective in rem relief from the automatic stay for cause, to wit, the prior bankruptcy filings and filing of the instant bankruptcy petition evidence a lack of good faith. *See In re Waldron*, 785 F.2d 936, 941 (11th Cir. 1986) ("whenever a Chapter 13 petition appears to be tainted by a questionable purpose, it is incumbent upon the bankruptcy courts to examine and question the Debtor's motives").

3. Although the Bankruptcy Code does not define good faith or include an explicit requirement that petitions be filed in good faith, bankruptcy courts have repeatedly lifted the automatic stay and dismissed cases as bad faith filings. The inference that good faith is required in order for Debtor to continue to enjoy the exceptional relief afforded by the automatic stay and the other provisions of the Code upholds the integrity of the bankruptcy courts.

4. Every bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings. Such a standard furthers the balancing process between the interest of Debtors and creditors which characterizes so many provisions of the bankruptcy laws and is necessary to legitimize the delay and costs imposed upon parties to a bankruptcy. Requirement of good faith prevents abuse of the bankruptcy process by Debtors whose overriding motive is to delay creditors without benefitting them in any way or to achieve reprehensible purposes. Moreover, a good faith standard protects the jurisdictional integrity of the bankruptcy courts by rendering their most powerful equitable weapons (i.e., avoidance of liens, discharge of debts, marshaling and turnover of assets) available only to those Debtors and creditors with "clean hands." *In re Little Creek Dev. Co.*, 779

F.2d 1068, 1071-72 (5th Cir. 1986) (citations omitted). *See also In re Waldron*, 785 F.2d 936 (11th Cir. 1986).

5. Thus, a Chapter 13 Debtor has a duty to act without an intent merely to delay or hinder his creditors both in the filing of the case and the filing of the plan.

6. All of the Circuit Courts have embraced a "totality of the circumstances" approach to analyzing good faith, which involves consideration of a number of factors related to the contents of a Debtor's plan as well as conduct of the Debtor, following the Eighth Circuit's lead in *In re Estus*, 695 F.2d 311 (8th Cir. 1982), and the Eleventh Circuit's later analysis in *In re Kitchens*, 702 F.2d 885 (11th Cir. 1983).

7. According to *Kitchens*, the prior conduct of the Debtor can be considered in determining whether the Debtor is demonstrating the sincerity and effort required to pass muster under Section 1325(a)(3) of the Bankruptcy Code. The Eleventh Circuit listed the following factors, among others, as indicative of bad faith:

(1) the motivations of the Debtor and his sincerity in seeking relief under the provisions of Chapter 13;

(2) the Debtor's degree of effort;

(3) the frequency with which the Debtor has sought relief under the Bankruptcy Reform Act and its predecessors; [and]

(4) the circumstances under which the Debtor has contracted his debts and has demonstrated bona fides, or lack of same, in dealings with his creditors.

8. Here, the Debtor's and Debtor's Spouse's successive bankruptcy filings have resulted in the cancellation of three separate foreclosure sales, thereby repeatedly frustrating Secured Creditor's efforts to complete its foreclosure action for nearly two years.

9. The timing, sequence, and cumulative effect of these filings demonstrate a pattern of conduct intended to hinder and delay Secured Creditor's ability to exercise its rights rather than a bona fide effort to reorganize debt. While the instant case represents the Debtor's first bankruptcy filing, it follows a series of unsuccessful bankruptcy filings by the Debtor's Spouse and continues the same pattern of delay that has prevented the foreclosure process from reaching completion. Accordingly, the Court may properly consider the Debtor's filing in the context of the parties' broader bankruptcy history and find that the present case was filed in bad faith and for the purpose of frustrating the Secured Creditor's legitimate foreclosure efforts.

10. The timing of the multiple bankruptcy filings have resulted in multiple delays and has severely hindered Secured Creditor from moving forward with the sale of the Property pursuant to the Final Judgment in a timely fashion.

11. It is clear from the history of this Mortgage account that the Debtor and Debtor's Spouse do not have the ability to consistently and timely make payments to Movant that will cover the actual outstanding amounts due. In light of the Debtor currently not having any income, the Debtor's Plan is clearly not feasible on its face as the current established net monthly income of $5,000.00 is insufficient to pay the proposed plan payment of $8,500. Moreover, the actual delinquency amount of $231,136.95 would further increase the monthly deficit. Additionally, even if the Debtor is able to obtain employment, the Debtor's ability to successfully reorganize will rely heavily on the Debtor's Spouse's income which has already proven insufficient in the 1st BKCY and which has now apparently decreased from $19,453.00 per month to $10,500.00 per month.

12. Furthermore, the Plan fails to address the other delinquent liens on the Property which even further highlights the lack of a genuine intention and ability to reorganize.

13. Consequently, in light of the frequency of the Debtor's and Debtor's Spouse's filings, the timing of the filing of each case which cancelled three foreclosure sales, the large delinquency amount, the inconsistent income and expenses reported by the Debtor's Spouse and unestablished income of the Debtor, the prior inability to maintain timely payments, the decrease in the overall income since the 1st BKCY, and the simultaneously pending 2nd BKCY, Movant respectfully suggests the Debtor's actions are indicative of the intention to delay and hinder Movant without benefit. These actions are in contravention of the Bankruptcy Code's good faith provision, which serves to prevent the bankruptcy forum from becoming a revolving door for Debtors who, without any real ability or serious intention of abiding by the duties imposed by Title 11, seek only to delay just process.

14. Hence, all of the Debtor and Debtor's Spouse's bankruptcy filings are part of a scheme to hinder and delay Secured Creditor and its foreclosure efforts, while the Debtor and unknown parties continue to enjoy the benefit of the Property.

15. Accordingly, Secured Creditor is entitled to an Order prohibiting the automatic stay from affecting its ability to proceed with the foreclosure of the Property for a period of two years.

**WHEREFORE**, Secured Creditor respectfully requests that this Honorable Court enter an Order:

a. Terminating the automatic stay in favor of Secured Creditor as to the Property in the instant case for a prospective period of two years;

b. permitting Secured Creditor to take any and all steps necessary to exercise any and all rights it may have in the Property described herein; and

c. granting any such other relief that the Court deems just and proper.

**Dated: 10/20/2026**

Respectfully Submitted,

**GHIDOTTI | BERGER, LLP**
*Attorneys for Secured Creditor*
10800 Biscayne Blvd., Suite 201
Miami, FL 33161
Telephone: 305.501.2808
Facsimile: 954.780.5578
bknotifications@ghidottiberger.com

By: /s/ Melbalynn Fisher
Melbalynn Fisher, Esq. (FL Bar #107698)

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on October 20, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

I also certify that the foregoing document is being served this day, either via transmission of Notice of Electronic Filing generated by CM/ECF or by first class U.S. Mail, upon:

***Debtor***
**JENNIFER ANN TROIANO**
12191 W. LINEBAUGH AVE.
PMB #512
Tampa, FL 33626

***Debtor's Counsel***
**Thomas A Nanna**
Thomas A Nanna PA
PO Box 66626
St. Pete Beach, FL 33736

***Party of Interest***
**BRIAN PETER TROIANO**
12191 W. LINEBAUGH AVE.
PMB #512
Tampa, FL 33626

***Party of Interest***
**BRIAN PETER TROIANO**
10119 Parley Drive,
Tampa, FL 33626

***Trustee***
**Kelly Remick**
Chapter 13 Standing Trustee
Post Office Box 89948
Tampa, FL 33689

***U.S. Trustee***
**United States Trustee - TPA7/13, 7**
Timberlake Annex, Suite 1200
501 E Polk Street
Tampa, FL 33602

By: /s/ Melbalynn Fisher
Melbalynn Fisher, Esq.